## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Deangela Smith                              :

                    Plaintiff,              :        Case No. C2-16-CV-807

          vs.                               :        Judge Algernon L. Marbley

Generations HealthCare Services,            :        Magistrate Judge Vascura
LLC, et al.
                                            :

                    Defendants.

---

### DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE
### OPT-IN PLAINTIFFS, JESSICA CLIMER and CHARLES HOLLINS
### OR IN THE ALTERNATIVE, MOTION FOR ORDER TO SHOW CAUSE

---

Now come Defendants, Generations Healthcare Services, LLC, and Generations

Too, LLC, hereinafter collectively referred to as "Defendants", by and through counsel, and

pursuant to Federal Rule of Civil Procedure 41(b), hereby move this Honorable Court for

an Order dismissing with prejudice the Opt-In Plaintiffs, Jessica Climer and Charles Hollins,

for failure to prosecute their claims and for their willful failure to comply with discovery

requirements; or in the alternative, for an Order to Show Cause ordering the Opt-in

Plaintiffs, Jessica Climer and Charles Hollins, to show cause as to why their claims should

not be dismissed with prejudice for their willful failure to comply with discovery

requirements and failure to prosecute said claims.  The basis for this motion is more fully

set out in the Memorandum in Support, attached hereto and made a part hereof by

reference.

Respectfully Submitted

RENNY J. TYSON CO., LPA

_____/s/ Renny J. Tyson_____

Renny J. Tyson                                    (0022576)
Attorney for Defendants, Generations Healthcare
       Services, LLC and Generations Too, LLC
1465 East Broad Street
Columbus, Ohio 43205
Telephone:   614-253-7800
Fax:             614-253-7855
Email:          admin@rennytysonlaw.com

I.    Introduction

On December 15, 2016, Plaintiff filed a motion requesting that her action be conditionally certified as a collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA") ("Motion to Certify").  On January 4, 2017, Defendants filed their Memorandum in Opposition to Motion for Conditional Class Certification.  After hearing, the Court granted the conditional class certification and issued a deadline of November 6, 2017 in which any potential plaintiffs could opt into the conditionally certified class.  Prior to expiration of the November 6, 2017 deadline, Jessica Climer and Charles Hollins filed the required affidavits with the Court to indicate their desire to be part of the conditionally certified class.  As such, these two individuals were granted Opt-In Plaintiff standing in the within matter.

Despite filing the required Consents with the Court to be recognized as Opt-In Plaintiffs, neither Ms. Climer nor Mr. Hollins has taken any further action to prosecute their claims.  Furthermore, despite being noticed for deposition by the Defendants, both Opt-In Plaintiffs failed to maintain contact with their attorney, and as such, the depositions could

2

not go forward and were cancelled due to Opt-In Plaintiff's failure to comply/participate with discovery. Finally, neither Opt-In Plaintiff, Jessica Climer, nor Charles Hollins, has taken any steps to prosecute or to maintain their alleged claims despite repeated efforts by their counsel for more than fifteen (15) months since filing their Consents to Sue with this Court on October 2, 2017 and October 27, 2017, respectively.

On March 13, 2018, Defendants filed their Motion to Decertify Conditional Class Certification and Motion for Dismissal of Opt-In Plaintiffs. Defendants' motions were predicated upon the fact that three (3) individuals were insufficient to constitute class certification as requested by the primary Plaintiff, DeAngela Smith, as well as the fact that the Opt-In Plaintiffs had failed to comply with discovery requirements or to take any actions to prosecute their alleged claims. On November 19, 2018, this Court decertified the conditional class. Further, this Court, in declining to dismiss the Opt-In Plaintiffs, placed both Opt-In Plaintiffs on notice of the potential of dismissal of their claims if they failed to comply with proper discovery requirements. Thereafter, on December 20, 2018, counsel for Opt-In Plaintiffs filed a Motion to Withdraw as Counsel of Opt-In Plaintiffs with attached Declaration. Plaintiff's counsel's Motion to Withdraw is pending and has not been ruled upon to date.

II. **_Law and Argument_**

Federal Rule of Civil Procedure 41(b) states:

If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

In the within matter, Defendants state, and the Opt-In Plaintiffs' counsel apparently agrees as demonstrated by his Motion to Withdraw and accompanying Declaration, that the Opt-In Plaintiffs have failed to prosecute their alleged claims or comply with the rules of court. As a result of the Opt-In Plaintiffs' failure to cooperate with discovery or prosecute their alleged claims, Defendants have been prejudiced in their defense of this matter. As a further result of the Opt-In Plaintiffs' failures to prosecute their alleged claims, counsel for the Opt-In Plaintiffs filed a Motion to Withdraw and accompanying Declaration with this Court on December 20, 2018 certifying his efforts to attempt to solicit the Opt-In Plaintiffs' cooperation with discovery requirements and prosecution of their claims. See copy of Opt-In Plaintiff's counsel's Declaration attached hereto as Exhibit A. Defendants assert that the Opt-In Plaintiffs have received more than sufficient notice of the potential dismissal of their alleged claims. In this Honorable Court's November 19, 2018 Decision and Order, the Court specifically stated: "Plaintiffs Climer and Hollins are put on notice, however, that they must comply with proper discovery requirements and that further failure to respond to proper discovery could result in sanctions, including dismissal."

Despite repeated requests, the Opt-In Plaintiffs continue to refuse to comply with discovery requirements or to prosecute their alleged claims in any manner whatsoever. A review of Plaintiff's counsel's Motion to Withdraw and Declaration demonstrate the extensive efforts taken to advise the Opt-In Plaintiffs of the potential for the dismissal of their claims, and the Opt-In Plaintiffs' continued disregard of the judicial process:

1.  With regard to Opt-In Plaintiff, Jessica Climer, counsel for Ms. Climer avers that his office made thirteen (13) telephone calls, sent one correspondence and three (3) emails to Ms. Climer advising of the need to cooperate with discovery and the potential of dismissal of her claim for failure to so comply with discovery; and

4

2.     With regard to Opt-In Plaintiff, Charles Hollins, counsel for Mr. Hollins
       avers that his office made nine (9) telephone calls, sent one
       correspondence and three (3) emails to Mr. Hollins advising of the
       need to cooperate with discovery and the potential of dismissal of his
       claim for failure to so comply with discovery.   See attached Exhibit A.

The Opt-In Plaintiffs' failure to comply with discovery requirements and to prosecute their

claims is severely prejudicing the parties' efforts toward resolution of this matter.  Further,

the Opt-In Plaintiffs have provided no justification for their failure to prosecute their claims,

despite being placed on notice that failure to do so could result in dismissal of their claims.

In *Hughes v. Gulf Interstate Field Services*, 2015 WL 8331980, this Honorable Court

listed four (4) factors that district courts should consider when weighing a motion to dismiss

for failure to prosecute.  This Court reaffirmed that:

> The Sixth Circuit directs the district courts to consider the following four
> factors in deciding whether to dismiss an action for failure to prosecute under
> Rule 41(b): (1) whether the party's failure is due to willfulness, bad faith or
> fault; (2) whether the adversary was prejudiced by the dismissed party's
> conduct; (3) whether the dismissed party was warned that failure to
> cooperate could lead to dismissal; and (4) whether less drastic sanctions
> were imposed or considered before dismissal was ordered."

Furthermore, in *Schafer v. City of Defiance Police Department,* 529 F.3d 731, 2008 U.S.

App. Lexis 13457, 2008 Fed App. 0227P (6th Cir.), the Court held that to support a

dismissal of plaintiff's claim for failure to prosecute, the Court must find that "the plaintiff's

conduct must display either an intent to thwart the judicial proceedings or a reckless

disregard for the effects of his conduct on those proceedings." (citing *Wu v. T.W. Wang,*

*Inc.*, 402 F.3d 641 (6th Cir. 2005).  Defendants assert that the Opt-In Plaintiffs' failure to

comply with discovery or to otherwise prosecute their alleged claims, clearly demonstrates

at minimum "a reckless disregard for the effects of their conduct" on this matter.

Based upon the above, the within matter is ripe for dismissal of the Opt-In Plaintiffs' claims with prejudice as all of the four (4) factors listed above have been demonstrated. Despite being on Court ordered notice, as well as being placed on notice by their counsel repeatedly, neither of the Opt-In Plaintiffs complied with discovery requirements or offered any reason for their failure to cooperate with discovery for more than a year. As such, the Opt-In Plaintiffs' conduct can only be described as either willful, at fault or even more egregiously, in bad faith for filing false Notices to Sue with this Court.

Defendants further assert that their efforts to proceed in this matter have been severely prejudiced by the failures of the Opt-In Plaintiffs set forth herein, as Defendants cannot depose or otherwise engage in discovery in an effort to refute or substantiate the Opt-In Plaintiffs' alleged claims. Moreover, as Defendants and the primary Plaintiff, DeAngela Smith, have reached a negotiated settlement on nearly all terms, it is impossible to globally dispose of this matter without the participation of the Opt-In Plaintiffs or the Court's dismissal of their claims with prejudice. As such, Defendants are again severely prejudiced as a result of the Opt-In Plaintiffs' failure to adhere to discovery requirements or to, in any manner, prosecute their alleged claims.

As set forth above, it is without question that the Opt-In Plaintiffs were repeatedly warned that their continued failure to cooperate with discovery or to prosecute their claims could result in dismissal, as this Honorable Court issued said warning in its November 18, 2018 Order and as demonstrated by the statements contained in the Opt-In Plaintiffs' counsel's Motion and Declaration to Withdraw as Counsel for the Opt-In Plaintiffs.

Finally, it is clear that the Court considered less drastic sanctions when it considered and denied Defendants' original Motion to Dismiss filed in March, 2018, and provided the

6

Opt-In Plaintiffs with another chance to prosecute their alleged claims and participate in discovery. As such, there is ample factual basis and case law presented to support its Motion to Dismiss the Opt-In Plaintiffs' claims with prejudice due to Ms. Climer's and Mr. Hollins' failure to prosecute their alleged claims. Defendants, therefore, respectfully request that this Honorable Court grant its Motion to Dismiss the Opt-In Plaintiffs' claims with prejudice.

However, and in the alternative, if this Honorable Court is not inclined to dismiss the Opt-In Plaintiffs' claims with prejudice, Defendants move this Honorable Court for an Order to Show Cause ordering the Opt-In Plaintiffs to demonstrate why their claims should not be dismissed with prejudice.

Case law supports the alternative request for an Order to Show Cause. In *Hughes, supra,* this Court was faced with a similar situation of Opt-In Plaintiffs failing to participate in discovery or to otherwise prosecute their claims. The *Hughes* court ordered the offending parties to respond to outstanding discovery requests and warned that their failure to do so could result in dismissal. When Opt-In Plaintiffs failed to heed the court's warning, a Show Cause order was issued ordering the offending individuals to "show cause within fourteen days why the Court should not dismiss them pursuant to Rule 41(b) for failure to prosecute." This Honorable Court, in refusing to accept the proffered excuse of counsel that he was not able to reach the offending parties, held that "when the refusal comes following notice and a court order, absent some extraordinary circumstances, it [the failure to comply] can be described as nothing other than willful or intentional."

Defendants are faced with the same dilemma as that faced by the defendant in *Hughes*, and absent court intervention, they will continue to be prejudiced by the Opt-In

Plaintiffs' willful or intentional refusal to comply with discovery requirements or to prosecute their alleged claims. As such, Defendants are without recourse other than a dismissal with prejudice of the Opt-In Plaintiffs' alleged claims or an Order to Show Cause in order that this matter may proceed toward resolution as was utilized by this Honorable Court in *Hughes*.

III.   Conclusion

As demonstrated herein, Defendants have been and continue to be prejudiced by the Opt-In Plaintiffs' willful disregard of the judicial process and thwarting of all efforts of the Court, Defendants and their own counsel to ensure prosecution of this matter. As no good or legal basis has been demonstrated by the Opt-In Plaintiffs for their willful, neglectful and, potentially bad faith conduct in failing to comply with discovery requirements or to otherwise prosecute their alleged claims, Defendants, Generations HealthCare Services, LLC and Generations Too, LLC, respectfully request that this Court issue an Order dismissing with prejudice the Opt-In Plaintiffs, Jessica Climer and Charles Hollins, due to their continued failure to comply with discovery requirements and to prosecute their alleged claims.

If this Honorable Court is not inclined to grant Defendants' Motion to Dismiss With Prejudice, then in the alternative, Defendants respectfully request that the Court issue an Order mandating that the Opt-In Plaintiffs show cause as to why their claims should not be dismissed with prejudice, pursuant to Federal Rules of Civil Procedure 41(b).

Respectfully Submitted,

RENNY J. TYSON CO., LPA

_____/s/ Renny J. Tyson_____
Renny J. Tyson                    (0022576)
Attorney for Defendants, Generations Healthcare
        Services, LLC and Generations Too, LLC
1465 East Broad Street
Columbus, Ohio  43205
Telephone:   614-253-7800
Fax:            614-253-7855
Email:         admin@rennytysonlaw.com

---

## CERTIFICATE OF SERVICE

---

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss With Prejudice Opt-In Plaintiffs, Jessica Climer and Charles Hollins, Or In The Alternative, Motion for Order To Show Cause was filed electronically on this 14th day of February, 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

_____/s/ Renny J. Tyson_____
Renny J. Tyson                    (0022576)
Attorney for Defendants, Generations Healthcare
        Services, LLC and Generations Too, LLC



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **DEANGELA SMITH**, individually and on behalf of all similarly situated individuals, | **Case No. 2:16-cv-807-ALM-CMV** |
| Plaintiffs, | **DISTRICT JUDGE MARBLEY** |
| *v.* | **MAGISTRATE JUDGE VASCURA** |
| **GENERATIONS HEALTHCARE SERVICES, LLC and GENERATIONS TOO, LLC,** | |
| Defendants. | |

### DECLARATION OF WILLIAM F. CASH III

I am William F. Cash III, and I offer this declaration in support of my own

motion to withdraw from representing opt-in plaintiffs Hollins and Climer.

1.      I am forty years old, of reasonably sound mind, and competent to

offer this declaration.

2.      I have been an attorney for nine years, I am a partner in my firm, and I

am experienced in handling aggregate litigation such as class actions and mass

torts. I am the lawyer responsible for this case.

1

3.     I am offering this declaration from personal knowledge (having personally experienced some of the events described), and also from a review of my firm's electronic filing system and paper file.

4.     To substantiate that phone calls were made, I checked our filing system's database of call notes, and also personally reviewed our firm's telephone records to ensure that calls were dialed and received (we have Caller ID).

5.     At all times discussed in this declaration, my secretary was Austin Ellis. Mr. Ellis left the firm just last week in order to prepare for law school. I directly supervised Mr. Ellis and am very familiar with his work. I can substantiate his activities based on my review of our files, as described above.

### Levin Papantonio has lost touch with the opt-in plaintiffs despite our reasonable efforts to contact them

6.     This action started with Plaintiff DeAngela Smith. The Court conditionally certified a class under 29 U.S.C. § 216(b). After notice to the class list, two people opted in to the class—Jessica Climer and Charles Hollins. We filed their opt-in consents on the docket, as required by the statute.

7.     Thereafter, we had only intermittent contact with these opt-in plaintiffs. I will show that we have made more than reasonable attempts to secure their cooperation in this case.

8.      In its recent Order, the Court wrote: "[I]t is not clear that Plaintiffs

Climer and Hollins were aware that they were out of alignment with court

deadlines or understood the importance of appearing at depositions." (ECF No. 67

at 4.)

9.      I am offering this declaration to assure the Court that each of these

plaintiffs did indeed have knowledge that not appearing for deposition could have

adverse consequences—up to and including dismissal.

10.      In short, both opt-in plaintiffs were repeatedly advised that not

cooperating with discovery could result in the end of their claims.

**Plaintiff Climer**

11.      We received Jessica Climer's signed opt-in form on September 28,

2017 and filed it soon thereafter.

12.      On October 27, 2017, my secretary Mr. Ellis called Ms. Climer, who

called back, and they set a call for Ms. Climer and me to talk on October 30. I

wanted to seek her help in establishing the facts of the case, including whether

Generations's skimpy class list was accurate, and whether she could give me

documents to substantiate its illegal pay practices.

13.      However, Ms. Climer did not call me on October 30 as agreed.

14.      On October 31, Mr. Ellis called Ms. Climer again and left a voicemail.

3

Case: 2:16-cv-00807-ALM-CMV Doc #: 68-1 Filed: 12/20/18 Page: 4 of 12 PAGEID #: 733

15.     On November 6, Mr. Ellis e-mailed me to say that he had left two messages for Ms. Climer without a response. Later, he e-mailed to say that they had somehow agreed to talk at 2pm that day. However, the next day he wrote me: "I called Ms. Climber (sic) again yesterday and her phone went straight to voicemail. I left a message and will follow up now."

16.     On November 7, a call to Ms. Climer again was directed straight to voicemail.

17.     On January 3, 2018, Mr. Ellis called Ms. Climer again, who did not answer. Mr. Ellis e-mailed her at the address she had given us to say: "I have tried calling but have been unable to reach you. We are in the discovery process and need to speak with you about the Generations wage and hour case you opted in to. Please give me a call at 850-435-7103 as soon as possible."

18.     Ms. Climer did not return the phone message or reply to the e-mail.

19.     On January 8, Mr. Tyson, counsel for the Defendants, asked me to set the depositions of each opt-in plaintiff.

20.     Mr. Ellis called Ms. Climer on January 18 to arrange a time. He left a voicemail.

21.     On January 19, Mr. Ellis called her again. She still did not answer. He wrote me to say: "Climer is refusing to return calls, emails, and any other form of communication." I agreed.

4

22.     So on January 19, I sent a letter to Ms. Climer. The letter included the

following language:

> My assistant, Austin, has recently reached out to
> you, through phone calls and e-mails, multiple times
> without hearing back from you. **Generation's defense
> attorney seeks to depose, or formally question under
> oath, all opt-in plaintiffs before the court imposed
> deadline of February 6, 2018.** The deposition will serve
> to inform both parties of the details and facts of your
> claim. Both parties will do everything possible to avoid
> creating any hassle for you to attend the deposition. It
> will be scheduled at a location close to where you live
> and at a time convenient to you.
>
> **However, it is imperative you contact my office by
> Friday, January 26, 2018 or the court could dismiss your
> case.** Please call me, or my assistant, at 850-435-7059 as
> soon as possible.

(Emphasis added.)

23.     This letter was received and read. Ms. Climer called us on January 23.

She agreed to give a deposition on February 5 and requested it be held in

Circleville.

24.     However, after January 23, Ms. Climer never spoke with us or wrote

to us again.

25.     When I heard about Circleville, I asked Mr. Ellis to advise her that the

Columbus location of Mr. Tyson's office was an easier location, that it was not

worth fighting about, and that we should agree to that.

26.     On January 25, Mr. Ellis called Ms. Climer, and she did not answer or return the call.

27.     On January 26, Mr. Tyson unilaterally set the depositions of Ms. Climer and Mr. Hollins. I wrote to Mr. Tyson seeking extra time and a rescheduling of the depositions, which he agreed to.

28.     Mr. Ellis, my assistant, then e-mailed Ms. Climer again on January 31. That e-mail included the following:

> Defense counsel for Generations has allotted us an additional 10 days to schedule the depositions of all opt-in plaintiffs. **I need to speak with you immediately regarding this case and scheduling your deposition.** The deposition will be scheduled at a time and place convenient to you and should not take long to complete. **You are at risk of losing your claim in this case if you refuse to show up and participate.** Please call me at 850-435-7103 as soon as possible.

(Emphasis added.)

29.     Ms. Climer did not respond to this e-mail.

30.     On February 14, Mr. Ellis sent an almost identical e-mail to Ms. Climer, which again included the sentence: "You are at risk of losing your claim in this case if you refuse to show up and participate." She did not respond to it.

31.     On February 14, and again on February 19, Mr. Ellis left voicemails for Ms. Climer. She didn't call back.

32.     On March 13, Mr. Tyson moved to decertify the class.

6

33.     As of the date Mr. Tyson moved, then, I can show that Ms. Climer was advised over and over that participation in discovery was important, and that not appearing for deposition could result in having her case dismissed. This was done at least three times in writing (January 19, January 31, and February 14). We have proof positive that the January 19 letter was received because it impelled her to make her only phone call to us, the one on January 23, and we have good reason to believe the e-mails were received since we used the address she gave us, and they did not bounce back. Finally, from her giving us the number (and using it to make the January 23 call, which the Caller ID logs show) we know we had a good phone number for her when we made our calls.

### Plaintiff Hollins

34.     We filed Charles Hollins's opt-in form on October 27, 2017.

35.     Mr. Ellis had a phone call with Mr. Hollins, on the number he gave us, on October 31.

36.     On November 6, Mr. Ellis and Mr. Hollins had another call.

37.     However, on November 7, Mr. Ellis told me that Mr. Hollins's phone number was "no longer in service." I am not sure what happened to the number because the two later reestablished phone contact.

38.     As noted above, Mr. Tyson, defense counsel, sought Mr. Hollins's deposition on January 8.

7

39.     On January 18, Mr. Ellis called Mr. Hollins to schedule the deposition.

His voicemailbox was full.

40.     On January 19, Mr. Ellis was able to successfully leave a voicemail. Mr.

Hollins did not return this call.

41.     On January 23, Mr. Ellis e-mailed Mr. Hollins asking him to schedule

the deposition, and followed up with a phone call the same day.

42.     Also on January 23, I sent a letter to Mr. Hollins that was very similar

to the one sent to Ms. Climer. I wrote:

> I am the attorney representing Plaintiffs in the
> Wage and Hour lawsuit against Generations Healthcare.
> You opted into this lawsuit on September 21, 2017.
>
> My assistant, Austin, has recently reached out to
> you, through phone calls and e-mails, multiple times
> without hearing back from you.  Generation's counsel
> seeks to depose, or formally question under oath, all opt-
> in plaintiffs before the court imposed deadline of
> **February 6, 2018**.  The deposition will serve to inform
> both parties of the details and facts of your claim.  Both
> parties will do everything possible to avoid creating any
> hassle for you to attend the deposition.  It will be
> scheduled at a time and location convenient to you.
>
> **However, it is imperative you contact my office by
> Wednesday, January 31, 2018 or the court could dismiss
> your case.**  Please call me, or my assistant, at 850-435-
> 7059 as soon as possible.

(Some emphasis added; some in original.)

43.     On January 26, Mr. Ellis called Mr. Hollins, who did not respond.

44.     On January 26, Mr. Tyson unilaterally set the depositions of Ms.

Climer and Mr. Hollins. As stated above, I wrote to Mr. Tyson seeking

rescheduling.

45.     On January 31, Mr. Ellis e-mailed Mr. Hollins and said:

> Defense counsel for Generations has allotted us an
> additional 10 days to schedule the depositions of all opt-
> in plaintiffs. I need to speak with you immediately
> regarding this case and scheduling your deposition. The
> deposition will be scheduled at a time and place
> convenient to you and should not take long to
> complete. **You are at risk of losing your claim in this
> case if you refuse to show up and participate.** Please call
> me at 850-435-7103 as soon as possible.

(Emphasis added.)

46.     Mr. Ellis called Mr. Hollins the next day. He actually answered the

phone and agreed to be deposed on February 12. I communicated this to Mr.

Tyson, who told me he was unavailable that day. Mr. Ellis called Mr. Hollins and

attempted to set another date.

47.     However, Mr. Hollins did not answer, and never communicated with

us again.

48.     Picking up the thread, Mr. Ellis called Mr. Hollins again, on February

12. There was no answer.

49.     On February 14, Mr. Ellis e-mailed Mr. Hollins again using the same

language from the January 31 e-mail. There was no reply.

9

50.    On February 19, Mr. Ellis called Mr. Hollins and left a voicemail.

51.    Mr. Hollins never called or wrote to us again.

52.    On March 13, Mr. Tyson moved to decertify the class.

53.    I am able to show that, like with Ms. Climer, Mr. Hollins had been

advised multiple times of the need to participate in discovery, and warned

specifically of the possible sanction of dismissal in the event he did not appear for

deposition. Again, I did that in my letter dated January 23, and Mr. Ellis did that in

the e-mails dated January 31 and February 14. We know that Mr. Hollins likely got

these e-mails and the letter because we used the contact information we got from

him (and the address we used to send the opt-in form that started his case in the

first place). We also know that we had the right phone number for Mr. Hollins

since he did speak with us at times. However, when it came to actually sitting

down for deposition, he did not maintain contact with us.

### Clients often drop out and fail to notify their attorneys

54.    I sometimes rue the fact that for some plaintiffs, it is much easier to

*start* a lawsuit than to stay *active* in a lawsuit.

55.    I do everything I can to impress upon plaintiffs that their

participation in a case is a significant event that involves real-world consequences

for lawyers, defendants, and judges. In this case, both plaintiffs had received the

10

court-approved notice explaining that this was an actively litigated, currently filed federal case that they were joining.

56.     Based on my nine years' experience representing individual plaintiffs, when a firm makes this many unanswered contact attempts to a client, the client is making an intentional choice to drop out of litigation.

57.     In short, I believe that many plaintiffs think if they just stop answering the phone, the annoying lawyers will go away. Some people just vanish.

58.     Many such plaintiffs are unaware of the extensive consequences their failures to respond ultimately generate in law offices and judicial chambers, and are not aware of many courts' liberal allowances for the legitimate reasons plaintiffs may have for disappearing.

59.     My firm sometimes uses a "three strikes" policy with respect to plaintiffs who fail to maintain contact with us. As the Court can see, I personally go way above and beyond just three strikes, and I use e-mails, phone calls, letters, FedEx, Facebook messages—whatever it takes to find people, and then a reasonable effort to keep people responding. Carrier pigeons are no longer available in the 21st century, but one time my staff and I actually investigated sending flowers to a client just to get their attention.

60.     Just last week, the Washington Post reported on the "ghosting" phenomenon in the context of employment. Danielle Paquette, *Workers are*

*ghosting their employers like bad dates*, Wash. Post, Dec. 12, 2018, *available at*

https://www.washingtonpost.com/business/2018/12/12/workers-are-ghosting-

their-employers-like-bad-dates/.

61.    I can personally attest that "ghosting" happens to lawyers, too.

62.    It is frustrating when it happens, because I believe my clients have

meritorious claims—claims that go to seed when not pursued.

### Conclusion

63.    I do not know what happened to Ms. Climer or Mr. Hollins. However, I

am convinced we did enough to (1) stay in contact, (2) try to schedule their

depositions, and (3) specifically advise them of the risk that they could lose their

case if they didn't sit for deposition.


In accordance with 42 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct. Executed on December 20, 2018.

WILLIAM F. CASH III